## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA



| | |
|---|---|
| **Frank Garrido, individually and on behalf of others similarly situated,** | **Case No.:** |
| Plaintiff, | **CLASS ACTION** |
| v. | **CLASS ACTION COMPLAINT FOR** |
| **Hear.com, LLC**  Defendants. | 1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227** |
| | 2. **VIOLATIONS OF FLORIDA STATUTE § 501.059** |
| | **JURY TRIAL DEMANDED** |

### INTRODUCTION

1. Plaintiff, Frank Garrido, brings this action against Defendant Hear.com, LLC ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and Florida Statute § 501.059.

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA") and Fla. Stat. § 501.059.

1

3. Defendant is a company providing hearing care services. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Middle District of Florida.

8. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

### JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each message in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is

subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.   Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has made the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such text messages have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

12.     Plaintiff is a natural person residing in the Fort McCoy, Florida.

13.     Defendant is a company based in Coral Gables, Florida, conducting business in hearing care services.

## THE TCPA

15. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

16. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone

numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase… in property, goods , or services." 47 U.S.C. § 227 (a)(4).

17. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

18. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.   Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

19. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

20. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."   In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods,

or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

22. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

23. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.  Id.

24. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the

TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

25. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

26. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'"  Van Patten v. Vertical Fitness Grp., No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**FLA. STAT. § 501.059**

27. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves . . . the playing of a recorded

message when a connection is completed to a number without the prior express written consent of the called party." Fla. Stat § 501.059(8)(A).

28. The statute defines "telephonic sales call" as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(I).

29. An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called. under Fla. Stat. § 501.059(4)(K).

### GENERAL ALLEGATIONS

30. At all times relevant, Plaintiff was an individual residing within the State of Florida.

31. At all times relevant, Defendants conducted business in the State of Florida.

32. On or around May of 2021, Plaintiff began receiving text messages from Defendant telling Plaintiff that he had been chosen as a participant to try one of Defendants new hearing aids.

33. Form May of 2021 through May of 2022, Plaintiff received numerous text messages from Defendant, all purporting to be from a "Dr. Lanter," attempting to market to Plaintiff hearing aids from the company.

34. Defendant's text messages constitute telephone solicitation because it encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to sell Plaintiff hearing aids.

35. Plaintiff received the text messages within this judicial district and, therefore, Defendant's violation of the TCPA and FTSA occurred within this district.  Upon information and belief, Defendant made other text messages to individuals residing within this judicial district and throughout the United States.

36. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.  This is in violation of 47 U.S.C. § 227(a)(5).

37. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

38. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

39. Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he spent numerous hours investigating the unwanted text messages including how they obtained her number and who the Defendant was.

40. Furthermore, Defendant's text messages took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

46. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

47. Plaintiff brings this case on behalf of two Classes defined as follows:

///

The Federal TCPA Class

All persons within the United States who received any solicitation/telemarketing text messages from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such messages within the four years prior to the filing of this Complaint.

The Florida TCPA Class

All persons within the State of Florida who received any solicitation/telemarketing text messages from Defendant to said person's cellular telephone and such person had not previously consented to receiving such messages within the four years prior to the filing of this Complaint.

48. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

49. Upon information and belief, Defendant has placed automated and/or prerecorded messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

50. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification

of the Class members is a matter capable of ministerial determination from Defendant's messaging records.

**COMMON QUESTIONS OF LAW AND FACT**

51. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

(1)    Whether Defendant made non-emergency text messages to Plaintiff's and Class members' cellular telephones using an ATDS;

(2)    Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such text messages;

(3)    Whether Defendant's conduct was knowing and willful;

(4)    Whether Defendant is liable for damages, and the amount of such damages; and

(5)    Whether Defendant should be enjoined from such conduct in the future.

52. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely made text messages to telephone numbers assigned to cellular telephone services is accurate,

Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

53. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

54. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

55. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The

likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

56. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(B)

#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

57. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

58. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or pre-

recorded voice … to any telephone number assigned to a … cellular telephone service ….” 47 U.S.C. § 227(b)(1)(B)(iii). “The term “telephone solicitation” means the initiation of a telephone call or message for the purpose of encouraging the purchase… in property, goods , or services.” 47 U.S.C. § 227 (a)(4).

59. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency text messages to the cellular telephones of Plaintiff and the other members of the Class defined below.

60. These text messages were made without regard to whether or not Defendant had first obtained express permission from the called party to make such messages. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when the messages were made.

61. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency text messages to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

62. Defendant knew that it did not have prior express consent to make these text messages and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

63. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future text messages. *Id*.

## COUNT II

### KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227(B)

#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

64. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

65. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

66. Defendant knew that it did not have prior express consent to make these text messages and knew or should have known that its conduct was a violation of the TCPA.

67. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls with pre-recorded voice messages, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

68. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III

### VIOLATIONS OF FLA. STAT. § 501.059

#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

69. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

70. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to

make non-emergency text messages to the cellular telephones of Plaintiff and the other members of the Class in violation of Fla. Stat § 501.059(8)(A).

71. Under Fla. Stat § 501.059(1)(G), prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales message to send the text message. Defendant did not have prior express consent to text messages the cell phones of Plaintiff and the other members of the putative Class when these telephonic sales text messages were made. *Id.*

72. Defendant has, therefore, violated Fla. Stat § 501.059(8)(A) AND Fla. Stat § 501.059(1)(G) by using an automatic telephone dialing system to make non-emergency text messages to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

73. Defendant knew that it did not have prior express consent to make these text messages, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

74. As a result of Defendant's conduct and pursuant to Fla. Stat § 501.059(10)(B), Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and Florida Statute § 501.059;

b.  An injunction prohibiting Defendant from using a telephone dialing system to text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c.  An award of actual and statutory damages; and

d.  Such further and other relief the Court deems reasonable and just.

//

//

//

//

//

20

## TRIAL BY JURY

75. Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: December 16, 2022                    Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE
RYAN L. MCBRIDE, ESQ.
TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni (1034549)
**Kazerouni Law Grouo, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride (1010101)
**Kazerouni Law Group, APC**
301 E. Bethany Home Road
Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com